WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>            Plaintiff,<br><br>v.<br><br>Tule Israel Alonso-Castaneda,<br><br>            Defendant. | No. CR-11-4067-TUC-DCB (BGM)<br><br>**REPORT AND RECOMMENDATION** |

Currently pending before the Court is Defendant Tule Israel Alonso-Castaneda's Motion to Suppress Images Illegally Found on Cellphone [sic] (Doc. 25). The Government filed its Response to Defendant's Motion to Suppress ("Response") (Doc. 34), and Defendant filed his Reply (Doc. 35). Defendant is charged with four (4) counts of using any means or facility of interstate or foreign commerce, to knowingly distribute, child pornography, that is, visual depictions, the production of which involved the use of minors engaging in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2), and which depicted such conduct, which had been shipped and transported in interstate or foreign commerce by means of computer, or otherwise. Indictment (Doc. 1) at 1-3. Defendant is also charged with three (3) counts of using any means or facility of interstate or foreign commerce, to knowingly receive, using any

means or facility of interstate or foreign commerce, including by computer, child pornography, that is, visual depictions, the production of which involved the use of minors engaging in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2), and which depicted such conduct, which had been shipped and transported in interstate or foreign commerce by means of computer, or otherwise. *Id.* at 3-4. Lastly, Defendant is charged with one (1) count of knowingly possessing child pornography, that is, visual depictions, the production of which involved the use of minors engaging in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2), and which depicted such conduct, which had been shipped and transported in interstate or foreign commerce by means of computer, or otherwise. *Id.* at 5. Defendant Tule Israel Alonso-Castaneda seeks "suppression of the images of child pornography found on the cell phone during the warrantless search in this matter." Def.'s Mot. to Suppress Images Illegally Found on Cellphone [sic] (Doc. 25) at 8.

Pursuant to LRCrim. 5.1, this matter came before Magistrate Judge Macdonald for an evidentiary hearing and a report and recommendation. On March 10, 2015, oral argument was heard by Magistrate Judge Macdonald and the matter taken under advisement. Minute Entry 3/10/2015 (Doc. 36). The Magistrate Judge recommends that the District Court, after its independent review, grant Defendant's motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Initial Encounter*

On December 8, 2010, United States Border Patrol Agent Argelia Robles was on

- 2 -

duty at the United States Border Patrol checkpoint located on Interstate 19, Kilometer Post 41, near Tubac, Arizona. Hr'g Tr. 3/10/2015 (Doc. 40) 11:7-22, 30:4-7. Agent Robles was assigned to the primary inspection area of the checkpoint, conducting immigration inspections. *Id.* at 11:23-12:4, 14:12-17. Agent Robles has been a Border Patrol Agent for nine (9) years and eleven (11) months. *Id.* at 10:14-18. Initially, Agent Robles was assigned to the duty station in Yuma, Arizona, then later transferred to Nogales, Arizona, and now is assigned to Tucson, Arizona. *Id.* at 10:19-23. She is currently a prosecutions agent. *Id.* at 10:24-25. Border Patrol Agent Tim Kouris is currently assigned to the Nogales Border Patrol Station as a K-9 handler. Hr'g Tr. 3/10/2015 (Doc. 40) 47:1-13, 47:24-48:5. Agent Kouris has been a border patrol agent for almost sixteen (16) years, and has been a K-9 handler since June 2008. *Id.* at 47:14-23.

On the date in question at approximately 6:45 p.m., Agent Robles was at the primary inspection area, when a white 2002 BMW X5 sports utility vehicle approached her position. *Id.* 14:18-24, 16:10-12, 34:5-8, 35:1-6, 49:10-12. At the same time, Agent Kouris was assigned to work his K-9 in the pre-primary area of the checkpoint. *Id.* at 48:9-49:9. This assignment involved moving through traffic, and allowing his dog to sniff the vehicles. *Id.* Agent Robles testified that Defendant Alonso-Castaneda was the driver and lone occupant of that vehicle. Hr'g Tr. 3/10/2015 (Doc. 40) 14:18-24, 16:10-12, 34:5-21; *see also* Hr'g Tr. 3/10/2015 (Doc. 40) at 71:18-22. Agent Robles asked Defendant Alonso-Castaneda if he was a United States citizen, and he responded affirmatively. Hr'g Tr. 3/10/2015 (Doc. 40) at 14:18-24, 16:10-12, 34:5-21. While

- 3 -

Agent Robles was interacting with Defendant Alonso-Castaneda, Agent Kouris was conducting a K-9 sniff at the rear of the vehicle. *Id.* at 14:25-15:4, 34:22-25, 48:22-49:9. Agent Robles testified that she went to the rear of the vehicle and Agent Kouris told her to refer the vehicle to secondary inspection, because the K-9 had alerted to the vehicle. *Id.* at 14:25-15:18, 36:2-4. Agent Kouris confirmed that he requested Agent Robles to refer the vehicle to secondary. *Id.* at 48:22-49:20. As such, Agent Robles directed Defendant Alonso-Castaneda to the secondary inspection area, and he moved his vehicle accordingly. *Id.* at 14:25-16:4, 36:22-35, 37:10-21, 49:21-25.

Agent Robles testified that initially upon referring Defendant to the secondary inspection area, she remained at her post in the primary inspection area. Hr'g Tr. 3/10/2015 (Doc. 40) 16:5-17, 37:10-21. Agent Robles further testified that approximately ten (10) or fifteen (15) minutes later, she heard Agent Kouris over her service radio state that "it was good for narcotics." *Id.* at 16:13-19, 16:25-17:5. Agent Robles testified that she called another agent for relief, and went to help Agent Kouris. *Id.* at 16:20-24.

### B. Secondary Inspection

Border Patrol Agent Thomas Mogz testified that on the date in question, he was in the canopied seating area of secondary while Defendant Alonso-Castaneda's vehicle was searched. Hr'g Tr. 3/10/2015 (Doc. 4) 113:4-14, 114:7-115:9. Agent Mogz is currently assigned to the Sandusky Bay Border Patrol Station in Ohio. *Id.* at 111:23-112:3. He has been a border patrol agent for over five (5) years, and prior to his current assignment, he was assigned to the Presidio, Texas Border Patrol Station, and temporarily assigned for

- 4 -

ninety (90) days to the Nogales Border Patrol Station in 2010. *Id.* at 112:4-13. While assigned to the Nogales Border Patrol Station, Agent Mogz was assisting with field operations, including working the I-19 checkpoint. *Id.* at 112:14-19.

Agent Kouris testified that the standard procedure, once a vehicle is referred to secondary, is for the driver to exit the vehicle, and the vehicle moved approximately twenty (20) yards away for an X-ray to be taken of it. *Id.* at 50:1-15, 57:11-19, 73:2-74:4, 75:11-22. The driver is then seated in a carport area, while their vehicle is being inspected. Hr'g Tr. 3/10/2015 (Doc. 40) 50:16-22, 54:8-13, 74:5-9. Agent Mogz testified that he escorted Defendant Alonso-Castaneda from his vehicle to the seating area, approximately fifty (50) feet away. *Id.* at 114:11-115:9. Agent Kouris further testified that individuals in the carport area, although detained, are not under arrest, and are not handcuffed. *Id.* at 50:23-51:3, 54:14-22, 109:16-110:4. Agent Kouris also testified that these individuals are also allowed to take their personal possessions, such as purses and telephones, out of the vehicle with them as long as the items do not pose a threat to officer safety. *Id.* at 105:22-10. Agent Kouris testified that once the X-ray is done of the vehicle, he and his K-9 will perform a follow-up sniff, which is what occurred on the day in question. *Id.* at 50:4-52:8. Agent Kouris remained at primary inspection until he was notified by the agent performing the X-ray that he was finished, and anomalies had been found. Hr'g Tr. 3/10/2015 (Doc. 40) 49:21-25, 51:15-52:1, 76:21-77:3; *see also* Hr'g Tr. 3/10/2015 (Doc. 40) 114:24-115:9. Agent Kouris testified that he then went and performed a systematic K-9 sniff of Defendant Alonso-Castaneda's vehicle, and his K-9 alerted and pinpointed to an area in the rear of the vehicle. Hr'g Tr.

3/10/2015 (Doc. 40) 52:2-21, 77:6-22. Agent Kouris testified that he secured his K-9, and further inspection of the vehicle uncovered four (4) large bundles of suspected illegal contraband in the area which would normally hold the spare tire. *Id.* at 52:9-53:13. Agent Kouris further testified that once he found the bundles he advised, over his service radio, that he had located contraband. *Id.* at 53:20-24. Agent Kouris also directed over the radio that Defendant Alonso-Castaneda be placed under arrest. *Id.* at 102:6-13, 103:13-21; 115:10-19.

Agent Kouris testified that photographs were then taken, and a further search of the car took place to ensure all contraband and other evidence was found. *Id.* at 54:22-55:12, 60:1-25, 77:23-14. Agent Kouris further testified that the vehicle was not registered to Defendant Alonso-Castaneda, and the cellular telephone was found clipped to the visor above the driver's seat. Hr'g Tr. 3/10/2015 (Doc. 40) 55:13-24, 56:9-13, 103:22-104:5. Agent Kouris estimated that between twenty (20) and twenty-five (25) minutes passed prior to discovery of the telephone. *Id.* at 56:25-57:10, 110:5-20. Agent Kouris testified that he moved behind the vehicle and looked at the cellular telephone for text messages or calls relevant to the crime, or incriminating photographs of drugs, money, or weapons. *Id.* at 57:22-59:12, 104:6-18, 107:16-109:13. While reviewing the contents of the cellular phone, Agent Kouris found images of an explicit nature depicting minors. *Id.* at 59:13-15, 71:23-72:4. Agent Kouris testified that at that point he stopped looking at the phone, and notified his immediate supervisor of the situation. *Id.* at 59:16-25, 72:5-25. Ultimately, Immigration and Customs Enforcement ("ICE") and Drug Enforcement Administration ("DEA") were contacted. Hr'g Tr. 3/10/2015 (Doc. 40)

59:16-25, 61:16-21.  Agent Kouris testified that the cellular telephone was secured prior to transport to Nogales for processing.  *Id.* at 61:12-62:4.

Agent Robles testified that when she went to the secondary area, and Defendant Alonso-Castaneda was seated under the canopy located there speaking with Agent Jose Martinez, and Defendant's vehicle was parked next to the secondary inspection area.  *Id.* at 17:6-24, 18:5-7, 38:17-24.  Agent Robles further testified that after stopping by Agent Martinez, she then went to the rear of the vehicle where Agent Kouris was located.  *Id.* at 18:11-13, 20:12-19.  Agent Robles testified that when she went to the rear of the vehicle, she saw bundles of marijuana, and Agent Kouris told her that he had found a cell phone containing child pornography.  *Id.* at 18:11-24, 20:12-29, 23:2-4, 42:8-20.  Agent Robles estimated that the time between her initial encounter with the Defendant in the primary inspection lane, and learning about the child pornography on the cellular telephone was approximately thirty (30) minutes.  Hr'g Tr. 3/10/2015 (Doc. 40) 19:8-20:4, 39:13-16.  Agent Robles testified that Agent Kouris contacted the DEA regarding the case, and was told by DEA Special Agent Dawson to contact ICE.  *Id.* at 28:15-21.  Agent Robles further testified that Agent Kouris then spoke with ICE Special Agent ("SA") Mike Osborne, who informed Agent Kouris of his intention to investigate the case further at the border patrol station.  *Id.* at 28:15-29:7.

Agent Mogz testified that after Agent Kouris made the call to arrest Defendant Alonso-Castaneda, Agent Martinez handcuffed him, and Agent Mogz assisted in escorting the Defendant to the holding cell.  *Id.* at 115:10-116:9.  Agents Robles and Mogz witnessed Agent Kouris reading Defendant Alonso-Castaneda his *Miranda* rights

- 7 -

in one of the holding cells, located in the trailer at the checkpoint. *Id.* at 21:2-23, 22:21-15, 23:8-24:25, 41:6-19, 62:13-21, 69:24-2, 115:19-116:12.  Agent Robles agreed that approximately one (1) hour elapsed between her initial encounter and Agent Kouris reading Defendant Alonso-Castaneda his *Miranda* rights.  *Id.* at 41:20-24.  Agent Kouris also performed a search of Defendant Alonso-Castaneda's person and found $1,045.00, which was then seized.  Hr'g Tr. 3/10/2015 (Doc. 40) 21:24-22:8, 41:6-16, 63:10-25.  Agent Kouris testified that the physical search happened prior to giving the Defendant his *Miranda* warnings.  *Id.* at 64:1-4.  Defendant signed the advise of rights form, which was witnessed by Agent Kouris.  *Id.* at 64:9-65:7.  After being advised of his rights, Defendant Alonso-Castaneda made a statement that he was on his way to the Cactus Moon bar in Tucson, Arizona to celebrate his girlfriend's birthday.  *Id.* at 25:13-23.  Agents Robles and Kouris testified that Defendant Alonso-Castaneda stated that the car and the cellular telephone both belonged to his girlfriend.  *Id.* at 26:2-8, 65:5-20, 70:3-11.  Agent Mogz confirmed that Defendant Alonso-Castaneda stated that the phone did not belong to him.  Hr'g Tr. 3/10/2015 (Doc. 40) 116:20-117:12.  Agent Kouris confirmed that his report mentioned the vehicle ownership question, but not the phone question.  *Id.* at 70:12-71:11.  Subsequently, Agents Robles, Martinez, and Mogz transported Defendant Alonso-Castaneda and the narcotics to the Nogales, Arizona border patrol station.  *Id.* at 26:9-18, 29:21-25, 41:25-42:2, 117:13-16, 117:19-20.  Agent Kouris did not travel with the Defendant, but also went to the Nogales station.  *Id.* at 66:8-20.  Agent Robles estimated that the trip took between twenty (20) and thirty (30) minutes, and Agents Kouris and Mogz confirmed this estimate.  Hr'g Tr. 3/10/2015 (Doc. 40) 30:1-15;

- 8 -

67:22-24, 117:17-18.

### C. Nogales, Arizona Border Patrol Station

While at the border patrol station, Agent Robles assisted Agent Kouris with processing the evidence, including field testing the marijuana and placing it in the evidence locker, and "hiding" the money for Agent Kouris to test his K-9. *Id.* at 26:17-28:13, 29:8-15. Agent Robles testified that she spoke with ICE SA Mike Osborne once he arrived in the processing area. *Id.* at 29:8-15. Agent Robles further testified that she told Special Agent Osborne that she would be a witness in his interview with Defendant Alonso-Castaneda. *Id.* at 29:16-20.

SA Osborne is currently employed by the Homeland Security Investigations ("HSI") in New York City. *Id.* at 84:16-21. He has been an HSI agent since 2006. Hr'g Tr. 3/10/2015 (Doc. 40) 22-23. In December 2010, SA Osborne was assigned to the Nogales Border Patrol Station. *Id.* at 84:24-85:3. On the evening in question, SA Osborne was informed by Nogales Border Patrol that a phone had been found containing child pornography. *Id.* at 85:19-25, 90:8-91:2. SA Osborne reported to the Nogales Border Patrol Station, received Defendant Alonso-Castaneda's personal effects, including the cellular telephone, and then interviewed him. *Id.* at 86:1-13, 93:20-8. SA Osborne indicated that the information obtained from the Defendant was of the type that a search warrant could have been obtained, if it were necessary. *Id.* at 86:11-87:4, 92:17-21. SA Osborne further testified that he sought a search warrant for the telephone discovered in this case, and the phone was searched a second time, pursuant to that warrant. Hr'g Tr. 3/10/2015 (Doc. 40) 87:5-12, 92:4-11.

Special Agent Osborne read Defendant Alonso-Castaneda his *Miranda* rights, and Defendant stated that he understood those rights, and was willing to give a statement. *Id.* at 30:17-22, 42:3-7. Agent Robles testified that Defendant Alonso-Castaneda stated that he knew about the marijuana, and was to be paid $1,500.00 for transporting it to the Home Depot located at Interstate 19 and Irvington. *Id.* at 30:25-31:4. Agent Robles further testified, and SA Osborne confirmed that Defendant Alonso-Castaneda indicated that the vehicle and cellular telephone belonged to Noa Santos, the individual in charge of the drug trafficking organization. *Id.* at 31:5-19, 96:10-18, 97:20-24. Agent Robles also testified that Defendant Alonso-Castaneda told her and Special Agent Osborne that the cellular telephone had been lent to him for his use, because Defendant's phone had either been lost or was broken. *Id*.

## II.    ANALYSIS

### *A.    Standing*

The Government argues that Defendant Alonso-Castaneda lacks standing to challenge the search of the cellular telephone, because he abandoned any such right by disclaiming ownership. Govt.'s Response (Doc. 34) at 5-7. Defendant urges that he had a reasonable expectation of privacy in the cellular telephone, and as such has standing to challenge the search. Def.'s Reply (Doc. 35) at 2.

"Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133-34, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978) (quoting *Alderman v. United States*,

394 U.S. 165, 174, 89 S.Ct. 961, 966, 22 L.Ed.2d 176 (1969)) (citations omitted). Defendant bears the burden of proving that the search of the telephone was illegal, and that he had a "legitimate expectation of privacy" in the telephone. *Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980) (citations omitted); *see also United States v. Lopez-Cruz*, 730 F.3d 803 (9th Cir. 2013). "The reasonable expectation of privacy turns on (1) whether the person had 'an actual (subjective) expectation of privacy,' and (2) whether the individual's subjective expectation of privacy is 'one that society is prepared to recognize as 'reasonable.'" *Lopez-Cruz*, 730 F.3d at 807 (quoting *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring)). Relevant factors for assessing the objective reasonableness of an individual's subjective expectation of privacy include: (1) whether the individual has a possessory interest in the thing seized; (2) whether he has a right to exclude others from item seized; (3) whether he has exhibited a subjective expectation of privacy that it remain free from governmental intrusion; (4) whether he took normal precautions to maintain privacy; and (5) whether he was legitimately in possession of the seized item. *Lopez-Cruz*, 730 F.3d at 808 (citing *United States v. Finley*, 477 F.3d 250, 258-59 (5th Cir. 2007) (citations omitted)). "[T]he fact of ownership or permissive use is merely one factor among many that aids in determining whether the individual had a reasonable expectation of privacy in the item searched." *Lopez-Cruz*, 730 F.3d at 808 (citing *United States v. Sarkisian*, 197 F.3d 966, 987 (9th Cir. 1999)). Furthermore, the "mere disavowal of ownership, without more, [does not] constitute[] abandonment of a person's reasonable expectation of privacy in that property." *Id.* at 809.

- 11 -

Based upon the record before this Court, Defendant Alonso-Castaneda was properly in possession of the cellular telephone. Although he initially told the agents that it belonged to his girlfriend, he later stated that it belonged to Noa Santos, and had been loaned to him to use, because his phone was broken. Hr'g Tr. 3/10/2015 (Doc. 40) 26:2-8, 31:5-19, 65:5-20, 70:3-11, 96:10-18, 97:20-24. As such, Defendant Alonso-Castaneda legitimately possessed the phone, and as such had a possessory interest in it, and he had the right to exclude others from its use. The phone was found clipped to the visor of the vehicle Defendant was the sole occupant of. Although the Government elicited testimony that people whose vehicles are searched at the secondary inspection area are allowed to take their phones and purses with them to the seating area, there is no evidence to suggest that this was communicated to Defendant Alonso-Castaneda or was otherwise obvious. Furthermore, Defendant Alonso-Castaneda had a reasonable expectation of privacy regarding the information contained in the phone. There is no evidence before the Court to suggest that he abandoned his reasonable expectation of privacy. Additionally, the search had already occurred by the time agents asked Defendant Alonso-Castaneda whether or not he owned the cellular phone, which goes to the heart of Fourth Amendment protections. *See* Section II.B., *infra*. The Court finds Defendant Alonso-Castaneda's "denial of ownership should not defeat his legitimate expectation of privacy in the space invaded and thus his right to contest the lawfulness of the search when the government at trial calls upon the jury to reject that denial." *United States v. Issacs*, 708 F.2d 1365, 1368 (9th Cir. 1983) (citations omitted). As such, Defendant Alonso-Castaneda has standing to challenge the warrantless search of the

cellular telephone.

### B. *Warrantless Search of the Cellular Telephone*

Defendant asserts that the warrantless search of Defendant Alonso-Castaneda's cellular telephone violated his Fourth Amendment rights. Def.'s Mot. to Suppress (Doc. 25) at 3. The Government argues that the warrantless search was a proper automobile search incident to arrest, and the good faith doctrine provides an additional exception to the warrant requirement. Govt.'s Response (Doc. 34) at 8-15. The Government also argues that inevitable discovery pursuant to the warrant makes suppression inappropriate. *Id.* at 16.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. In *Riley v. California*, – U.S. –, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014) the Supreme Court of the United States considered "how the search incident to arrest doctrine applies to modern cell phones[.]" *Riley*, 134 S.Ct. at 2484. In *Riley*, the Court reviewed its precedent delineating the search incident to arrest doctrine. In this discussion, the Court reviewed *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), stating *Robinson*'s holding that "a 'custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification.'" *Riley*, 134 S.Ct. at 2483 (quoting *Robinson*, 414 U.S. at 235, 89

S.Ct. 2034). Ultimately, in *Riley*, the Court "decline[d] to extend *Robinson* to searches of data on cell phones, and [held] instead that officers must generally secure a warrant before conducting such a search."

Subsequently, the Ninth Circuit Court of Appeals addressed the warrantless search of a cell phone at a border patrol checkpoint in *United States v. Camou*, 773 F.3d 932 (9th Cir. 2014). In *Camou*, on August 1, 2009, the defendant was stopped at a primary inspection checkpoint in California. *Id.* at 935. Agents became suspicious of Camou, and asked permission to open the door of his vehicle. *Id.* Upon opening the door, agents discovered an illegal alien hidden behind the seats. *Id.* Camou was arrested and his truck and a cellular telephone found in the cab of the truck were seized. *Id.* Agents searched Camou's cell phone without a warrant and discovered child pornography. *Camou*, 773 F.3d at 936. The Ninth Circuit Court of Appeals reversed the district court's denial of Camou's motion to suppress. *Id.* at 935. This Court finds *Camou* is squarely on point with the instant case.

### 1. Search Incident to Arrest

The Government distinguished *Camou* from the current matter, because the time between arrest and the search in *Camou* was found to be too long to be a search incident to arrest. Hr'g Tr. 3/10/2015 (Doc. 40) 124:7-126:11. The Ninth Circuit Court of Appeals "summed up the two general requirements of a valid search incident to arrest as follows: 'The determination of the validity of a search incident to arrest in this circuit is a two-fold inquiry: (1) was the searched item 'within the arrestee's immediate control when he was arrested'; (2) did 'events occurring after the arrest but before the search

- 14 -

make the search unreasonable?'" *Camou*, 773 F.3d at 938 (quoting *United States v. Maddox*, 614 F.3d 1046, 1048 (9th Cir. 2010) (citations omitted)). As an initial matter, the cellular telephone was not in Defendant Alonso-Castaneda's immediate control at the time that he was arrested. Agent Kouris testified that he discovered the phone on the vehicle's visor, while Defendant Alonso-Castaneda was seated under the secondary inspection canopy roughly fifty (50) feet away. Hr'g Tr. 3/10/2015 (Doc. 40) 55:13-24, 56:9-13, 57:11-19, 75:11-22, 103:22-104:5, 114:11-115:9.

Furthermore, the Ninth Circuit Court of Appeals has "held that the intervening event of [a defendant] being handcuffed and placed in the back of a patrol car rendered [the subsequent search of defendant's key chain left in the car to be] unreasonable." *Camou*, 773 F.3d at 939 (citing *Maddox*, 614 F.3d at 1048-49). Although the search of the cell phone in this case occurred temporally sooner than that of Camou, the removal of Defendant Alonso-Castaneda from the vehicle prior to the X-ray and subsequent search, and his handcuffing and removal to the holding cell, render the search of his cellular telephone unreasonable as a search incident to an arrest.

### 2. Exigency Exception

"Under the exigency exception, officers may make a warrantless search if: (1) they have probable cause to believe that the item or place to be searched contains evidence of a crime, and (2) they are facing exigent circumstances that require immediate police action." *Camou*, 773 F.3d at 940 (citations omitted). Relying on the Supreme Court's decision in *Riley*, the Ninth Circuit held that a delay in searching a cell phone removes the exigency requirement. *Camou*, 773 F.3d at 941. Furthermore, the *Camou* court

- 15 -

found that "even if [it] were to assume that the exigencies of the situation permitted a search of Camou's cell phone to prevent the loss of call data, the search's scope was impermissibly overbroad." *Id.*

Here, Agent Kouris testified that he looked at the cellular telephone for text messages or calls relevant to the crime, or incriminating photographs of drugs, money, or weapons. *Id.* at 57:22-59:12, 104:6-18, 107:16-109:13. This goes beyond any arguably permissible search to prevent the loss of call data. As such, the exigency exception to the warrant requirement does not apply to the search of Defendant Alonso-Castaneda's cellular telephone.

### 3. Vehicle Exception

"The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." *California v. Acevedo*, 500 U.S. 565, 580, 111 S.Ct. 1982, 1991, 114 L.Ed.2d 619 (1991). Agent Kouris had probable cause to believe that Defendant Alonso-Castaneda's vehicle contained evidence of criminal activity when he discovered the marijuana bundles hidden in the spare tire well. The Ninth Circuit Court of Appeals, however, has explicitly held, however, "that cell phones are not containers for purposes of the vehicle exception." *Camou*, 773 F.3d at 942. Accordingly, the search of Defendant Alonso-Castaneda's cell phone cannot be justified under the vehicle exception to the warrant requirement.

### 4. Inevitable Discovery

When "the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . .

then the deterrence rational has so little basis that the evidence should be received." *Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984). The Ninth Circuit Court of Appeals has recognized, however, that it has "never applied the inevitable discovery exception so as to excuse the failure to obtain a search warrant where the police had probable cause but simply did not attempt to obtain a warrant." *United States v. Young*, 573 F.3d 711, 723 (9th Cir. 2009) (quoting *United States v Mejia*, 69 F.3d 309 (9th Cir. 1995); *see also Camou*, 773 F.3d at 943.

Here the Government asserts that "it is likely that a search warrant would have been sought had defendant not abandoned the phone by claiming it was not his." Govt.'s Response (Doc. 34) at 16. The evidence does not support this contention. "By asking this court to conclude that the inevitable discovery exception applies here because a search warrant would have issued, the government is asking us to 'excuse the failure to obtain a search warrant where the police had probable cause but simply did not attempt to obtain a warrant.'" *Camou*, 773 F.3d at 944 (quoting *Mejia*, 69 F.3d at 320). This is impermissible under Ninth Circuit case law, and as such the inevitable discovery exception does not apply.

### 5. Good Faith

The Government relies on *Herring v. United States*, 55 U.S. 135, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009) in its argument that the agents acted in "good faith" and "[t]he search was not the product of 'reckless or deliberate' officer misconduct, and was the result of objectively reasonable reliance on precedent." Govt.'s Response (Doc. 34) at 14-15. The Ninth Circuit Court of Appeals squarely addressed and rejected the

Government's argument in this case. *Camou*, 773 F.3d at 944-45. "The Supreme Court has never applied the good faith exception to excuse an officer who was negligent himself, and whose negligence directly led to the violation of the defendant's constitutional rights. *Id.* at 945. Agent Kouris did not rely "on anyone or anything in conducting his search of [Defendant Alonso-Castaneda's] cell phone, let alone that any reliance was reasonable." *Id.* As such, the good faith exception is inapplicable to this case.

## III. CONCLUSION

The Court finds that Defendant Alonso-Castaneda has standing to contest the search of his cellular telephone. The Court further finds that warrantless search of his cell phone was not a valid search incident to arrest, and no other exceptions to the warrant requirement apply.

## IV. RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court GRANT Defendant Tule Israel Alonso-Castaneda's Motion to Suppress Images Illegally Found on Cellphone [sic] (Doc. 25).

Pursuant to 28 U.S.C. §636(b) and Rule 59(b)(2) of the Federal Rules of Criminal Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. No reply shall be filed unless leave is granted from the District Court. If objections are filed, the parties should

...

use the following case number: **CR-11-04067-TUC-DCB**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge in accordance with Fed. R. Crim. P. 59 may result in waiver of the right of review.

Dated this 14th day of April, 2015.

Honorable Bruce G. Macdonald
United States Magistrate Judge